The United States Court of Appeals for the Ninth Circuit is now in session. Thank you and I think I see everyone's camera live. Good morning, everyone. Welcome to the Ninth Circuit Court of Appeals. Thank you for joining us in this special session we're conducting today. Judge Graber and I want to welcome and thank our colleague from Ohio, Judge Zuhari. Thank you very much for making the time in your schedule to be here with us. We have one case for argument today. I believe I see both counsel on the monitors. If counsel or for both counsel, just give me the thumbs up just to confirm you can hear what I'm saying. Okay. And with that, you both can see the clock and counsel, you may proceed when ready. Thank you, Your Honor. May it please the court, this is Tom Perkinson and I'm here to argue on behalf of Mr. Lemus and I'd like to reserve five minutes. I'm not hearing you, sir. Yeah. Oh, you can't hear? Yeah. You kind of faded there for a second. Let's try that again. May it please the court, my name is Tom Perkins. I'm here to represent Mr. Lemus and I'd like to reserve five minutes. You know what? If we could stop the clock real quick. So Mr. Perkinson, it's a little spotty, honestly, the audio seems to be kind of coming in and out. So yeah, try it again. That sounds better. Does it sound better? So good morning, may it please the court, this is Tom Perkinson. Is that good? Much better. Yeah, so counsel, you've got it, you may proceed. Thank you, your honor. May it please the court, my name is Tom Perkinson, I represent Mr. Lemus and I'd like to reserve five minutes for rebuttal, if I may. You got it. I would like to start out just talking about the jurisdiction on the motion to reopen. It is petitioner's position that the court does have plenary jurisdiction because 8 U.S.C. 1252 does not bar jurisdiction over the motion to reopen at all. A motion to reopen is not a decision on discretionary relief. It's a decision on whether to grant a new hearing at which such an application could be made. If we look at, you have to look at both these statutes. In the recent Supreme Court case, Buarfa and in Patel, they're looking at the INA and saying, okay, here's the statute that's authorizing the agency to take this action. Is that statute implicated in 1252 and the bars to review at 1252 A to B? So if we do that for our motion to reopen statute, it's at 1229 C7 and it does not make anything discretionary. This is a timely motion to reopen. So there's no aspect that assigns a discretionary function to the attorney general. And then if we look at 1252, it says A, B, it has our list, our famous list of things that we cannot review, including the car cancellation. But this decision is not a decision on the car cancellation. It's a decision on whether to reopen. And in fact, you can look at the agency decisions. They tell you what the application is before they start their analysis. And on this reopening decision, it's page two of the consolidated record. It says, what is the application at the very top? And the application is reopening. The application is not in a car cancellation. The application is reopening. So reopening is not listed in the list at 1252 A to B, I, and the reopening statute does not make the decision on reopening discretionary. So under KUKANA, there's no bar to plenary review of the motion to reopen. So, and so I think that the court can get to, from the motion to reopen, direct review of the credibility finding, because we're not dealing with a denial of discretionary relief, but the credibility finding was dispositive to the motion to reopen. And so that's a way to directly review it as a question of fact, the way that it was briefed in the initial opening brief from when the case started. So I do think that the thing is that you have to, you can't, the court should not be trying to decide, well, what should we do? How should we review this? The court should just interpret these statutes. So that's what happened in BUARFA and it shouldn't be, oh, well, NACARA means we can't review because that's not the way it should work. It should be, does the statute prescribe jurisdiction or not? In BUARFA, the Supreme Court was clear, there the issue was a good faith marriage. And in that case, the statute which authorized the agency action was discretionary. So the court said, you can't review that because the action came from a discretionary statute. And the courts specifically said, had this arisen under the other statute, the statute that is not discretionary, then you could review it. So it's not about certain subject matters cannot be reviewed. It's what is the statute that authorizes that agency action? Here, the statute that authorized the motion to reopen decision, page two, the consolidated record was not NACARA cancellation. It was the reopening statute, which is not, does not implicate the bars at 1252A2B. And the same thing in Patel. Patel was the same issue. And the Supreme Court there specifically said that, yes, okay, so you have this false claim to citizenship, we're not going to review it because this is from a decision on adjustment of status. But had it been, had this agency action in finding the false claim to citizenship come under the inadmissibility statute, which is not a discretionary statute, then yes, it would be directly reviewable. And so you have the same subject matters in Patel. It was a false claim to citizenship in Buarifa. It was a good faith marriage that either are or are not reviewable based upon only what is the statute that authorized the agency to make that decision. The agencies, they don't have freestanding freewheeling authority to do anything that has to do with immigration. They're bound by statutes. They have to do, they can only act within the confines of the INA. So I think that that is the way the court should look at the jurisdictional issue under the motion to reopen. And all issues then should be reviewable through the motion to reopen, even though admittedly, the credibility finding as a fact finding cannot be reviewed under the 2018 petition for review. The first BIA decision that Patel clearly says you can't review it. However, even there, under 1252A2D, where we have, we're allowed review of legal and constitutional issues, that credibility finding, it didn't, the agency didn't do the work that it needed to do for an adequate credibility finding. It didn't consider that there were all sorts of inconsistencies in that preliminary hearing and the police report with the same witness saying different things at different times. It didn't consider how Lemus was actually consistent with what the deputy district attorney said at the probation hearing. And so it didn't consider all factors. That's a legal error. So even under Patel, that legal error can be remanded to the agency, sent back to the IJ. IJ, you need to do this over again. This credibility finding is not good enough. That's a legal error. There's also a constitutional aspect to that credibility finding. The agency said you didn't testify consistently with what Lopez said at the preliminary hearing or in the police report. Okay. Well, he didn't say the same things in those two documents. And the DDA is also not consistent with what the deputy district attorney said is inconsistent. So there's no way under the standards that the agency set, you've got to testify consistently with the police report and the preliminary hearing. There's no way Lemus, anybody could do that. It's an impossible task. That's fundamentally unfair. So there we have a constitutional issue, which is another reason. Send it back to the IJ. This credibility finding was not adequate. You need to do it over and see what happens from there. So I think that the first IJ, the IJ that actually heard the case, that's another thing that the agency decision didn't take into account how that IJ was viewing Lemus' testimony. That IJ said, I'm not sure about him. I'm going to give him the benefit of the doubt when talking about his problems testifying. And that never made it into the agency decision either. So there's another factor that wasn't considered, which goes to the legal error. So I do think that the credibility finding is kind of the linchpin to Mr. Lemus' prevailing on the NACARA, which is his best relief. And that there are legal constitutional ways. And the court does have jurisdiction to review it as a fact matter under the petition for review of the real. Did you already, excuse me for interrupting, questioned about NACARA. Shouldn't we dismiss that claim because it was forfeited in your direct petition? Well, at the time that we briefed that, the law was clear that this was a discretionary determination, which the court had no jurisdiction to review. So here we have a change in the law. Wilkinson overruled the binding Ninth Circuit case, case law that forbade review of that. So I think that it isn't forfeited because once Wilkinson came out, it was a change in the law. Also, I think both parties briefed the hardship issue. So that's an issue that the court can reach as well. I don't think it would prejudice either party. I don't think it would prejudice the government to hear that argument from the respondent. Now, the other, there are a lot of issues. I don't know if there are any in particular the court would like to hear a respondent on. I do have a kind of a, I'll call it a step back question. What I mean by it is this, is that, look, your client is, I don't want to say elderly, but your client's not a spring chicken anymore. And he's got some real mental health issues, as I understand. Have there been any attempts, and I know we have a new administration. I think new administration is kind of sorting out how it wants to deal with some of these cases. I'm curious if there have been any attempts recently to try to mediate or work something out in this case in light of some of the equities in this case. I'll just put it that way. Yes. So, no, there haven't been, your honor. Have there been none that have been successful, or have there just been none at all? I don't think that there have been any. Yeah. So, there are other options that could occur later on. But, yeah, I'm not aware that we attempted to mediate the case or anything like that. I don't know if this work has a different recollection. Would your client be willing to engage in mediation if that, through our mediation office, if that were something that the government would be willing to do? Certainly. Yes. I mean, he definitely would be. It's, his criminal record is probably what made us not pursue that route too assiduously. But, again, we're, yeah, he's definitely willing to pursue that route if it's available, for sure. I mean, I don't want to make light of his criminal history. It does bother me. I'm not going to lie. But it is, if I recall, it's pretty old. Yes. So, the serious, the most serious crime maybe is the gun crime, and that's from 88. And then the domestic violence was from 93. When you look at those, the sentences are also on the minor side. He didn't go to prison. I think the sentence was suspended. It was a one-year sentence, and then it was reduced to 364. But I think he just did probation. And for the other one, it was a 30-day sentence. So, it has been a long time since he had any trouble with the law. So, since 97, I believe, was the last arrest. And, you know, he was also undiagnosed, presumably at that time, in terms of the mental illness. In terms of the crime, you know, whether that's a crime of moral turpitude, I think that it's not because there the court needs to look at the elements, and the elements don't require any harm to any person. I think that with Loper-Bright, this court's decision in Nunez is the proper standard. And we don't have, we don't have, this is not like an assault crime. In an assault crime, the main thing that's happening is that someone's being attacked or threatened with attack. And you add a gun to that, that's very serious. This, the grabberman here is shooting a gun in the wrong place. Shooting a gun is not in itself some horrible act. It's a major lapse of judgment. But it's not, it's not the same as attacking someone. So, the assaultive cases and the cases where there's an element of putting someone in danger, they don't apply to 246 of the California Penal Code. And that's why I think that this, that's not a crime of moral turpitude. Also, since the court under Loper-Bright no longer has to defer to the agency, I would encourage the court to go back to the classic definition of a crime of moral turpitude as a matter of statutory interpretation. That definition existed before the INA was enacted in 1952. So, that should be the definition that applies and not the agency definition. Silva Trevino. At this point, I don't know if it's necessary to overrule that because of Loper-Bright. But moving forward, that standard has always seemed wrong to me. Reprehensible covers every crime. So, it's not a useful way to look at the case. So, you had mentioned you wanted to preserve some time for rebuttal. Yes. Oh, I'm sorry, Your Honor. Yeah, that's all right. No, that's no problem. I want to ask my colleagues, Judge Graber, Judge Zahari, unless you have any questions. Not at this point, no.  Let's go ahead and reserve then if we could. And if I could ask Ms. Ruiz to give him four minutes for rebuttal, we'll round up to four. Great, thank you. All right, Ms. Workman, when you're ready. May it please the Court. Claire Workman for the Attorney General. To narrow down the issues that this Court must decide, starting with the motion to reopen denial in the 2019 PFR. First, the Court lacks jurisdiction to review all of the factual and discretionary challenges to the Board's denial of reopening for the NACARA cancellation application. But the Court can review and should uphold the denial of reopening regarding asylum and related protection. Regarding the 2018 PFR, first, Petitioner initially acknowledged that he is not seeking direct review of the NACARA application. And therefore, he forfeited review of that claim. That was in his reply brief at page three, the original reply brief. If this Court nevertheless reaches NACARA, it lacks jurisdiction over the independently dispositive denial in the exercise of ultimate discretion, or Petitioner raises no valid constitutional or legal challenges. Counsel, I'd like to ask you about the question whether the BIA abused its discretion by not returning this case to an immigration judge in view of indicia of incompetency under matter of MAM. It seems to me that there was overwhelming, compelling evidence of potential incompetency. This is a person who had severe head trauma, severe alcohol abuse. He was diagnosed with dementia, anxiety, depression, and memory disturbances. Witnesses testified that he was significantly forgetful, and he had mental problems. He'd been declared unable to work due to a disability. His testimony, the IJ at one point said, I think he must be guessing because of memory and mental illness problems. It seems to me that this clearly warranted further review by an IJ. Why is that incorrect in your view? If it is incorrect in your view? Well, the Board reasonably determined that there weren't indicia of mental incompetency, particularly... But that's the very question that I'm asking. I think it's unreasonable. Why do you think it's reasonable? Sure. Because, well, first of all, Your Honor, he was represented by counsel, which is a really key point because a lot of times if a counsel realizes that he cannot properly communicate with his client, then he brings that to the immigration judge's attention and requests a competency evaluation. That was not done here. That's not an answer to MAM, which says if the IJ observes indicia of incompetency, the IJ has an obligation, regardless of whether the issue is raised. Yes, Your Honor. But the IJ... And, well, as the Board noted, the petitioner was able to answer most of the questions asked, and he seemed to be coherently understanding what was asked of him. There were points where he was confused, but that was ultimately resolved with respect to the asylum declaration and whether he wrote it or not. But ultimately, he does... The record shows that he had a rational and factual understanding of the nature and object of the proceedings. This is from MAM, the criteria. And he can communicate with his attorney, and can he reasonably examine and present evidence and cross-examine witnesses? Well, that's, of course, done through his attorney, which was done here. And so he was able to answer a lot of the questions that were asked and only became unable to be consistent and fully perhaps remember the details of his criminal convictions. But he was able to remember a lot of other things even that predated that in Guatemala. So there may be... The Board certainly did not abuse its discretion in declining to remand for a competency evaluation. And this is similar to this court's case in Salgado. Well, in Salgado, there was no medical diagnosis the way there is here. And there was not this same constellation of severe issues, including both mental and physical problems. And what significance do you take from the IJ's observation that he seemed to be guessing at answers, not necessarily lying, but guessing? That was the IJ's comment. What do we make of that? Well, I believe the IJ instructed him at the beginning that if he didn't understand a question, he should ask it to be repeated. It would be explained to him. And so he had these warnings about the questions. And he didn't ever say, oh, I don't know the answer to that. Well, he was confused and he didn't understand questions, many of them, many of them. I want to ask you a different question, if I could. What is your response to Judge Owens' question about the viability of mediation in this case? Well, Your Honor, the government will, of course, do whatever the court suggests or orders us to do. If it wants us to explore mediation or some kind of alternative resolution, we, of course, will do that. I will note that we have never been approached by Petitioners' Counsel about any alternative resolution. And I don't believe that there is anything in the record indicating, I mean, this case has been pending since in the Immigration Court since 2008. So we've gone through several. Mediation can happen at any time. And it's not something that has to be preserved in the way that other issues do. I mean, this individual is in his late 60s and he clearly has dementia and many physical and mental ailments. And, you know, his situation is not necessarily typical of those that are being removed. So if I understand your answer correctly, you would be amenable to the possibility of discussions. Yes, Your Honor. We can't make any promises, of course. Of course not. I mean, he does have, as his counsel in this court has recognized, he does have four criminal convictions. I do realize that they were years ago. 30 years ago was the most recent. Correct, Your Honor. But they are very, especially the shooting at an inhabited dwelling. That is a very serious offense. And the fact that the immigration judge denied as a matter of ultimate discretion, in large part because of the criminal history, despite the fact that the crimes were so old, I think that will weigh heavily on any kind of alternative possible resolution. But that being said, of course, we are happy to explore something if that would be what the court would want us to do, Your Honor. And going back to that. Before you go any further, I'd like to ask a couple questions where we left off. Can you talk to me about the two standards that the BIA seemed to use, which they would likely change reasonable likelihood of success? Are those interchangeable? Are those different? And if they are a bit different, when you look behind the curtain, can you say that he applied the correct standard, even if he may have misspoken? So, Your Honor, are you talking about in the motion to reopen denial where certainly with respect to the asylum and related protection claims, the board applied, clearly applied the reasonable likelihood standard, which this court subsequently clarified in Fonseca-Fonseca that that is the standard that applies for prima facie eligibility and that the discretion is the COELO might likely change the result. So, with respect to all of the additional hardship evidence for the NACARA claim, the board does go through those and explains why each one would not, they likely change the result. And it's almost as if it's leading up to the ultimate discretion because, and it's also almost irrelevant or there's no prejudice, even if the board did apply now in hindsight, because at the time the standards, the board did use those standards interchangeably. But it's not a problem because ultimately the board says with all of this extra hardship evidence, it's still not likely to change the result of ultimate discretion. And of course, ultimate discretion is not reviewable. It's not reviewable on direct review. It's not reviewable in a motion to reopen. And so, unless there's constitutional or legal error, and there's not here. So, to answer your question, Your Honor, there is no problem. Well, first of all, also, I should mention that petitioner waived any challenge to any if there's any claim that the board applied the wrong standard or that it caused him any  But we, of course, argue in the alternative that it is not a problem here. And for that point specifically, petitioner spent a good deal of time talking about how this court can get to the motion to reopen and the credibility finding and the other factual indiscretionary findings that go into that underlying motion to reopen denial. And this court has already rejected that idea in the Figueroa-Ochoa case and specifically rejected the Eighth Circuit's view that petitioner is advocating here about Kukana. And so, this court has to follow Figueroa-Ochoa as it has done in unpublished decisions since then, recognizing that any determination that relates to as the discretionary relief is also unreviewable. And that includes determinations made in the context of motions to remand, motions to reopen, motions for to continue, as long as they are related to the relief that is ultimately discretionary or that and one that's barred from review by 1252A2B1. And the other thing about part of the credibility allegations of error were not exhausted to the board. And so, of course, the court shouldn't review those anyways, in addition to the fact that it's a factual finding that's unreviewable. And the picture that petitioner paints about the first IJ giving him the benefit of the doubt, I mean, there's some of that in the record, but there's also a point where she at the end is ready to find that he's perjured himself. So, I think that it's not so clear cut as petitioner makes it out to be. But in any event, that's unreviewable. And with respect to the NACARA application being forfeited, it was forfeited in its entirety. And there's an independently dispositive discretionary denial of that application, which he could have challenged that all along by saying there was a legal or constitutional error. And he didn't. He waived review of NACARA. So, he can't now come back or shouldn't now be able to come back and say, oh, well, things have now changed because the law on hardship, now the court can review the application of a legal standard to undisputed facts with respect to the hardship. So, now we want to challenge NACARA. Well, no, you still have this ultimate discretionary denial that's dispositive. And with respect to the shooting at an inhabited dwelling being a crime involving moral turpitude, it is a, categorically, it is a very inherently dangerous crime, both at California courts and this court have acknowledged. And even though the, so the mens rea for the actual shooting has to be malicious and willful, the discharge of the weapon. But then there's a reckless mens rea as to the a reckless disregard as to whether a bullet would hit an inhabited dwelling or a person in and around that building. And as this court has recognized in Covarrubias-Tempost, that's a 2011 case, it creates a risk of injury to other people and damage to property. And there's a subjective awareness of possible injury. The California courts also have called it an evil act done with reckless disregard of the probable consequences of someone being struck and have noted that there's a significant likelihood or high probability that personal injury or death will result. Because people are generally in and around buildings that are inhabited. And even if they're not occupied at the time. And as this court has recognized in the Moran case, non-fraudulent category of crimes involving moral turpitude includes some crimes that seriously endanger others, even if no actual injury occurs. This is also very similar to the crime found to be, to involve moral turpitude in Diaz-Flores, involving burglary, because it is a dwelling that violates and the shooting violates the sanctity of the home. And therefore, by the accepted moral standards of having peace and security in that space, even if you're not home at the time when it happens. And also, this court has already deferred to the board's two elements for crime involving moral turpitude of reprehensible conduct and the sufficiently culpable mental state. And so, that precedent. Excuse me, counsel. Yes. I think that your colleague on the other side suggested that Loper Bright might change that, if I understood his argument correctly. What is your response to his argument on that specific point? Yes, it does not change that, Your Honor, because Loper Bright says that that controlling precedent is still subject to stare decisis unless a litigant brings up a... I forget the words they used, but it has to be a significant reason for the court to to go away from that precedent. And Petitioner has not done that here. So, these two elements have long been relied on by the board and this court. And honestly, even when the court has had its own definition of CIMT, it has recognized that it's in Ortega-Lopez in 2020. Our definition of moral turpitude for non-fraudulent offenses is substantially the same as the board's. So, they're really not all that different. But in any event, oh, I'm sorry, it's a sufficiently special justification for overruling the existing precedent under Loper Bright. And Petitioner has not given any such justification here. We're a little over time. I just want to check with my colleagues. Do either of you have any questions for counsel at this point? All right, if you got something real quick. I'm sorry, Judge Zahara, you kind of cut out there. I said I'm good. Good to go. Thanks. Unless, counsel, you have something you could really quick wrap up with, I think it's probably time to wrap it up. Thank you, Your Honor. If the court, we would respectfully ask that the court deny and or dismiss the petitions for review. All right. Thank you, counsel. Thank you. All right. Mr. Perkinson, I think I gave you four minutes. Thank you, Your Honor. Just very quickly, Figueroa Ochoa, it does not cite the motion to reopen statute. So, I don't see that Figueroa Ochoa has any, it doesn't bind this panel in any way on the interpretation of 229, 1229AC7, the motion to reopen statute. Figueroa Ochoa didn't mention that statute. As to the ultimate exercise of discretion in reopening, the board there, argument there is that they only considered three factors, the crime, the testimony about the crimes, and his need for palliative care, which will not be available in Guatemala. Every other factor in the motion to reopen was said, that's not enough. That's not dispositive. That doesn't make a difference. But that's not how you do it. You have to take everything together and put it balance and weigh it all. And the board didn't do that. That's a legal error that allows this court to reach discretion in the NACARA reopening. For the crimes, my client has three crimes, the 88 crime, the 93 domestic violence, and the 97 DUI. And again, my colleague's argument on the CIMT, yes, 246 does encompass terrible acts, but the least act criminalized is simply shooting a gun near a house and being reckless as to whether property will be damaged. And that's not enough to transform it into a CIMT. You can certainly commit a crime of moral turpitude by committing 246, but you don't have to. It's not the board addressed credibility. So, pages 425 to 427, it was the board addressed credibility in the first petition for review. So, this court has, you know, if the court gets to it, it wasn't forfeited or waived. It was briefed in that first petition for review. And then the is a legal, is another legal error that directly impacted discretion. And it probably impacted the credibility too. These are more legal issues the court can reach to remand back to the immigration judge for a redo on that credibility finding. And that's going to change the discretionary outline. You don't have to review discretion. You just have to correct these legal errors and the fix it. So, those are the rebuttal points I wanted to make. I don't want to waste the panel's time if there's any questions. Otherwise, thank you very much. Anything from my colleagues? Seeing no hands, I want to thank counsel, both of you for your briefing and argument in this case. We appreciate it. And I guess we'll adjourn the conference now. Thank you. Thank you. This court for this session stands adjourned.
judges: GRABER, OWENS, Zouhary